Case 3:21-cv-04435-EMC   Document 1   Filed 06/09/21   Page 1 of 11

JUANITA ROLES,
ELIZABETH M. WILSON,
ASIA FORD,
BRANDON MERCER,
WILLIAM L. COLLINS,
D'ARTAGNAN M. LLOYD
WHERE DO WE GO BERKELEY
1023 Wood Street
Oakland, CA 94607
Tel: 510-575-1158
Email: wheredowegoberk@gmail.com
Pro Se Plaintiffs

FILED

JUN - 9 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA ROLES, ELIZABETH M. WILSON, ASIA FORD, BRANDON MERCER, WILLIAM L. COLLINS, D'ARTAGNAN M. LLOYD, and WHERE DO WE GO BERKELEY, on behalf of itself and those it represents;<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARMENT OF TRANSPORATION (Caltrans), TOKS OMISHAKIN, individually and in his official capacity as Director of Caltrans; and, Dina El-Tawansy, individually and in her official capacity as Director of District Four<br><br>Defendants | Case No.: **C 21-04435**<br><br>**COMPLAINT FOR INJUCTIVE RELIEF** |

*Juanita Roles v. Caltrans*, No.
Complaint for Injunctive Relief- 1

## JURISDICTION AND VENUE

1. This case belongs in federal court. This is an action for injunctive relief pursuant to 42 U.S.C. Section 1983. The request for a temporary and preliminary restraining order is based on the danger of imminent harm to plaintiffs, who are disabled homeless residents of Ashby/Shellmound encampment located on Caltrans land in the City of Berkeley, California. Imminent harm includes the imminence of violation of their Constitutional rights, including rights secured by the Fourth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 7 of the California Constitution, as

2. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1343. This case is brought pursuant to 42 U.S.C. Section 1983 and raises questions of federal constitutional law under the Fourth and Fourteenth Amendments and federal statutes. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. Sections 2201(a) and 2202 and under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12132.

3. Venue is proper in the Northern District in that the events and conduct complained of in this action are occurring in the Northern District.

## INTRADISTRICT ASSIGNMENT

4. Because this action arises in Alameda County, it is assigned to the Oakland or San Francisco Division.

## PARTIES

5. Plaintiff JUANITA ROLES, is a disabled woman, who has lived at the Caltrans Ashby/Shellmound encampment for approximately two years. She suffers from a compound fracture where her ankle broke in two places in January 2020. It did not heal properly and now she requires an operation. She has difficulty walking and uses a wheelchair to assist with her mobility. Ms. Roles is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

6. Plaintiff ELIZABETH B. WILSON has lived at the Caltrans Ashby/Shellmound encampment for over approximately four years. She suffers from Post-Traumatic Stress Disorder and Depression. Ms. Wilson is a qualified individual with a disability within the meaning of the American with Disabilities Act ("ADA") and Cal. Gov't Code §12926.

*Juanita Roles v. Caltrans*, No.
Complaint for Injunctive Relief- 2

7. Plaintiff ASIA FORD has lived at the Caltrans Ashby/Shellmound encampment for approximately two years. He has been diagnosed with type II immunity asthma and have four amputated toes on my right foot. In addition, 14 bones on my right foot are broken. This makes it difficult for me to walk. Mr. Ford is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

8. Plaintiff BRANDON MERCER has been homeless for twenty-four years. He lives at the Caltrans Ashby/Shellmound encapment. He suffers from Crones Disease, emotional problems, anxiety and social paranoia. He is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

9. Plaintiff D'ARTAGNAN LLOYD has been homeless for approximately seven years. He has lived at the Caltrans Ashby/Shellmound encampment for approximately one year. He is disabled due to ulcerations on his feet which make walking difficult. He has been diagnosed with generalized anxiety disorder. He is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

10. Plaintiff WILLIAM L. COLLINS has been homeless for approximately three years. He has lived at the Caltrans Ashby/Shellmound encampment for approximately two years. He suffer from clinical depression. He is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

11. Plaintiff WHERE DO WE GO BERKELEY (WDWG) is a 501(c)(3) organization made up of homeless and housing insecure individuals and advocates. WDWG Berkeley's mission is to serve, support and advocate for homeless individuals living in the East Bay. WDWG's main focus is to represent, support, and serve the four largest encampments along the I-80 corridor –in Berkeley and Emeryville, California. The Caltrans Ashby/Shellmound encampment located in Berkeley and in Emeryville is one of these four encampments. WDWG Berkeley brings this suit on behalf of itself and on behalf of the homeless individuals it supports in Caltrans Ashby/Shellmound encampment located in Berkeley, California.

12. Defendant the California Department of Transportation (Caltrans) is a California State Agency under the laws of the State of California, with the capacity to sue and be sued.

13. Defendant TOKS OMISHAKIN is the Director of the Caltrans and is sued in both his individual and official capacities.

14. Defendant DINA EL-TAWANSY is the District Four Director for the CALTRANS and is sued in both her individual and official capacities.

## STATEMENT OF FACTS

15. WDWG Berkeley was founded because of Bay Area cities' policies and practices of "evicting" and "sweeping" the homeless and clearing homeless encampments without providing homeless encampment residents with shelter, housing, or necessary services.

16. Out of sheer exasperation and fear of breaking the law, homeless residents asked the simple question of local government "Where do we go?" when individuals are homeless, impoverished, and forced to exist on public land.

17. Since its inception on September 3, 2019, WDWG Berkeley has provided port-a potties, hand washing stations, tents, tarps, medical support, harm reduction supplies, food, tent heaters, employment, trash removal, advocacy, clothing, furniture, blankets, clothes and a host of other items dedicated to helping homeless encampment residents survive on the streets.

18. WDWG provides these services to the residents of the Emeryville Ashby/Shellmound encampment including plaintiffs JUANITA ROLES, ELIZABETH B. WILSON, ASIA FORD, BRANDON MERCER, D'ARTAGNAN M. LLOYD, AND WILLIAM L. COLLINS.

19. Ms. Roles, Ms. Wilson, Mr. Ford, Mr. Mercer, Mr. Lloyd and Mr. Collins rely on WDWG Berkeley for food, tents, and supplies. They rely on other service providers that provide weekly medical services, harm reduction supplies, legal services, and survival supplies to the Emeryville Ashby/Shellmound encampment. These service providers include, but are not limited to, Berkeley Outreach Coalition, Copwatch, Consider the Homeless, Lifelong Medical Homeless Outreach team, Berkeley Free Clinic, Berkeley Suitcase Clinic, East Bay Angels, Berkeley Food Network, Berkeley NEED, Homeless Action Center, and a host of others.

20. WDWG Berkeley has partnered with Caltrans to clean encampments without moving residents for over a year. WDWG rents a front loaders, clears the trash from the encampment, places the trash in areas designated by Caltrans for pick up, and then Caltrans

sends a crew to pick up all the trash and haul it away. Residents have not had to move their tents during these WDWG Berkeley/Caltrans cleanups. The Ashby/Shellmound encampment has always been a part of the scheduled cleanups and none of the residents have had to move.

21. On Tuesday, May 25-26, 2021, representatives from Caltrans sent an email to Mr. Rogers stating that they wanted to close the encampment.

22. From approximately June 5, 2021 – June 8, 2021, Mr. Rogers emailed Caltrans notifying them that there were at least nine individuals at the encampment who are disabled.

23. On June 8, 2021, at around 10:15 a.m. the Caltrans posted a notices at the Ashby/Shellmound encampment notifying residents that they needed to remove themselves and their belongings by 8:00 a.m. on June 10, 2021. The notice stated that "all persons on the site at that time will be required to leave." The notice states that "[a]ll property that is collected will be discarded if not claimed within 60 days of the date of the cleaning." It specifically did not state that personal property would be stored in a manner that homeless residents could retrieve them afterwards.

24. The notice also directs residents to contact a number 510-622-0792. This is a private residential telephone number and not the number to Caltrans or its representatives.

25. As a result, plaintiffs and other residents are unable to avail themselves to any storage services offered by Caltrans or if Caltrans does store their belongings, they would not know where to locate the items.

26. As a result, plaintiffs and other residents are unable to avail themselves of any storage services offered by Caltrans.

27. The residents of Ashby/Shellmound encampment have nowhere to go and nowhere to move their belongings.

28. Plaintiff JUANITA ROLES is working with Lifelong Medical Street Outreach team to acquire housing. If evicted, she has no where to go. Most importantly, if she is forced out of the encampment it will jeopardize her ability to get housing and she would not have access to services that are available at the encampment.

29. Ms. Roles would lose her belongings because she uses a wheelchair and cannot

physically move her living structure and her property. She cannot stay in a shelter because she is non ambulatory.

30. Plaintiff ELIZABETH B. WILSON has no where to go. She believes that she will lose access to the necessary services that she receives at the encampment. The threat of the current eviction has caused her to feel hopeless.

31. Ms. Wilson feels safe in the encampment where she knows other people and has community. This community protects her from others who would victimize her. Her disability prevents her from entering a shelter.

32. Plaintiff ASIA FORD has been homeless for five years. Mr. Ford states that if evicted he will "be in danger of losing my health support from Lifelong Medical mobile nurses." He further states that if he is "evicted it will worsen my disability due to overstressing an open wound." Mr. Ford would lose his belongings because of his open wounds on his feet prevent him from physically move his living structure and his property.

33. Mr. Ford cannot enter a shelter because they do not have the knowledge to manage his wound care that his family and health providers can manage. He will not have access to medical supplies which he obtains from donations and his community. Mr. Ford has no where to go if he is evicted.

34. Plaintiff BRANDON MERCER is worried that if he is evicted from his home at the encampment, he will lose the community he trusts and he will no longer have access to his medical care. He is afraid for his well-being, personal security and safety as well as the safety of his personal possessions. Mr. Mercer has no where to go if he is evicted.

35. Plaintiff D'ARTAGNAN M. LLOYD has no where to legally shelter if evicted. He cannot go into a shelter because of his disabilities. His disability makes walking difficult because if evicted there will be no way for him to get anywhere without causing injury to his feet.

36. Plaintiff WILLIAM L. COLLINS has will not have a legal place to shelter if evicted. No one has offered him a place to go. He is concerned that he will be in danger because he will lose contact with his primary care physicians who visit him at the encampment. If he loses contact with his physicians, he will not longer have access to regular check ups and medications.

He cannot go into a shelter because the do not facilitate access to medications.

37. Plaintiffs are seven of the approximately thirty current residents who live at the Ashby/Shellmound encampment.

38. The actions threatened by Caltrans will impact and harm all of the residents of the encampment and especially those who are diagnosed with disabilities. While Caltrans has indicated it will evict the people in the encampment on its property, it has not made any changes to any rules, policies or procedures despite notice and knowledge that the plaintiffs and other similarly situated homeless residents have disabilities.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**State-Created Danger in Violation of Due Process Guarantee Under the U.S. Constitution**
(By plaintiffs against all defendants)
(42 U.S.C. § 1983)

39. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

40. Under the Fourteenth Amendment to the U.S. Constitution, no state can "deprive any person of life, liberty or property without due process of law." This federal constitutional provision confers upon Plaintiffs a right to be free from a deprivation of their due process by Defendants.

41. Under 42 U.S.C. Section 1983, "[e]very person who, under color of any statute, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party inured in an action at law..."

42. As part of this right, Defendants are prohibited from affirmatively placing Plaintiffs in known or obvious danger under an objective deliberate indifference standard.

43. By clearing the homeless encampments in Emeryville Ashby/Shellmound and failing to provide alternative safe housing, where those acts have made Plaintiffs and other similarly situated unhoused persons at greater risk infection, injury, and death, Defendants

have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

44. Accordingly, Defendants have subjected Plaintiffs to state-created danger in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

## SECOND CLAIM FOR RELIEF
## State-Created Danger in Violation of Due Process Guarantees Under the California Constitution
(By plaintiffs against all defendants)
(Cal. Const. Art. I, §7)

45. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

46. Under Article I, Section 7 of the California Constitution "A person may not be deprived of life, liberty or property without due process of law." This state constitutional provision confers upon Plaintiffs a right to be free from a deprivation of their due process rights by Defendants.

47. As part of this right, Defendants are prohibited from affirmatively placing Plaintiffs in known or obvious danger under and objective and deliberate indifference standard.

48. By clearing the homeless Ashby/Shellmound encampment and failing to provide alternative safe housing, where those acts have made Plaintiffs and others similarly situated unhoused persons at greater risk infection, injury, and death, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

## THIRD CLAIM FOR RELIEF -
## Unlawful Seizure of Property in Violation of the Fourth Amendment
(By plaintiffs against all defendants)
(42 U.S.C. § 1983)

49. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

50. Defendants have notified plaintiffs that "all property that is collected will be discarded if not claimed within 60 days of the date of the cleaning" thereby signaling their intention to violate the Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property. Defendants' unlawful actions are done with the specific intent to deprive plaintiffs of their constitutional rights to be secure in their property or with reckless

disregard of their rights.

51.     Plaintiffs are informed and believe that the acts of the defendants and their employees and agents are intentional in failing to protect and preserve their property and that, at minimum the defendants were deliberately indifferent to the likely consequences that the property would be seized and destroyed unlawfully because no location or correct contact information was provided to the plaintiffs regarding the storage of their personal property. As a direct and proximate consequence of the acts of the defendants and their agents and employees, the plaintiffs will suffer loss to their personal property.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Title II of the Americans with Disabilities Act of 1990**
(By plaintiffs ROLES, WILSON, FORD, MERCER, LLOYD, and COLLINS against defendants)
(42 U.S.C. § 12132)

52.     Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

53.     Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, provides that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

54.     California incorporates all of these federal protections into state law, such that violations of the ADA are also state law violations and also contains a broad and independent disability civil rights mandate. (Cal. Gov't Code § 11135 et seq.)

55.     The term "disability" includes persons with mental or physical impairments that limit one or more major life activities. Cal. Gov't Code § 12926 (i) (medical condition), 12926 (j) (mental disability), 12926 (l) (physical disability). Three of the plaintiffs are qualified individuals with disabilities within the meaning of 42 U.S.C. § 12102; 42 U.S.C. § 12131, 28 C.F.R. § 35.104 and Cal. Gov't Code §12926.

56.     The ADA and associated state laws obligate public entities to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150.

57. Defendants operate a California state agency that providing notices, evictions and sweeps of homeless people and homeless encampments that reside on Caltrans property. The rules, policies, procedures and programs associated with homeless encampment and homeless individual cleanings, clearings, and evictions has failed to provide accommodations to residents with known disabilities. Defendants' failure to adopt policies or procedures that provide reasonable accommodations for homeless people with disabilities denies Plaintiffs with disabilities meaningful access to services in violation of Title II of the Americans with Disabilities Act and 28 C.F.R. § 35.150 and accompanying state law.

**PRAYER FOR RELIEF**

58. WHEREFORE, plaintiffs request that this Court grant them relief as follows:

   (a) Grant a Temporary Restraining Order, Preliminary Injunction or Permanent Injunction immediately enjoining Defendants and each of them from closing the Ashby/Shellmound encampment and/or otherwise removing homeless persons from said locations unless and until each person is actually provided—in real-time—with safe, indoor individual private and accessible housing.

   (b) Order Defendants to create policies, procedures and rules that provide accommodations to homeless and disabled individuals.

   (c) Order Defendants to rescind the notice of eviction and removal of personal belongings and structures on Thursday, June 10, 2021 or soon thereafter and permit homeless persons who have been displaced from the Ashby/Shellmound location to return.

   (d) That the Court retain jurisdiction and exercise oversight as to Defendants' compliance with its Orders.

   (e) That the Court award reasonable attorney's fees to Plaintiffs' Counsel.

   (f) Any further relief that this Court deems appropriate.

///
///

## DEMAND FOR TRIAL BY JURY

59. Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: June 9, 2021

_____
Juanita Roles

_____
Elizabeth M. Wilson

_____
Asia Ford,

_____
Brandon Mercer

_____
William Collins

_____
D'artagnan M. Lloyd

_____
Ian Cordova Morales Rogers
President, Where Do We Go Berkeley
Pro Se Plaintiffs