1   DAN SIEGEL, SBN 56400
    EMILYROSE JOHNS, SBN 294319
2   SIEGEL, YEE, BRUNNER & MEHTA
3   475 14th Street, Suite 500
    Oakland, California 94612
4   Telephone: (510) 839-1200
    Facsimile: (510) 444-6698
5   Email: danmsiegel@gmail.com;
6   emilyrose@siegelyee.com

7   ANDREA M. HENSON, SBN 331898
8   BRIGITTE NICOLETTI, SBN 336719
    EAST BAY COMMUNITY LAW CENTER
9   1950 University Avenue Suite 200
    Berkeley, CA 94704
10  Telephone: (510) 977-2511
11  Email: ahenson@ebclc.org; bnicoletti@ebclc.org

12  OSHA NEUMANN SBN 127215
    LAW OFFICES OF OSHA NEUMANN
13  1840 Woolsey St.
14  Berkeley, CA 94703
    Telephone: (510) 717-8604
15  Email: oshaneumann@gmail.com

16  Attorneys for Plaintiffs

17

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

19

| | |
|---|---|
| WHERE DO WE GO BERKELEY, on behalf of itself and those it represents; RONNIE BROOKS; JASON MILLER; KINNDRA MARTIN; KEVIN CODDINGTON; JONATHAN JAMES; MARIAH JACKSON; SARAH TEAGUE; TERRY LEE WALKER, JR.; JOSE MORFIN; ALHONDRO MYERS; and SHAWNA GARCIA, | Case No.: 21-CV-04435-EMC |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | Date:  March 23, 2022 |
| CALIFORNIA DEPARMENT OF TRANSPORATION (Caltrans), et al. | Time:  9 a.m. |
| Defendants. | Ctrm:  5 – 17th Floor |
| | 450 Golden Gate Avenue, San Francisco, CA 94102 |

*Where Do We Go Berkeley v. Caltrans*, No. 21-CV-04435-EMC
Plaintiffs' Reply in Support of Motion for Preliminary Injunction

## I.      INTRODUCTION

Granting plaintiffs' preliminary injunction means that for 409 days, Caltrans will have been required to abide by the Americans with Disabilities Act, and not violate plaintiffs' substantive due process right to be free from state created danger. Plaintiffs' motion makes the requisite showings required for the relief plaintiffs are seeking—to remain in place for a brief period or to have the status quo restored by allowing them to return to the Seabreeze site.

In their brief, defendants (1) misapply the "serious questions" prong of plaintiffs' preliminary injunction burden, (2) reprise previously considered and ruled upon arguments regarding state law and the ADA, (3) erroneously characterize an injunction that would return plaintiffs to the Seabreeze as mandatory rather than prohibitory, (4) claim that conducting their homeless encampment outreach and relocation program in a manner consistent with the ADA would be a fundamental alteration, (5) and deny that plaintiffs have shown a likelihood of imminent harm. Plaintiffs address these arguments in their five allotted pages, but in doing so, do not waive their opposition to other arguments raised by defendants.

## II.     ARGUMENT

### A.      Plaintiffs Make a Showing That There Are "Serious Questions" Going to the Merits.

The "serious questions" standard is the appropriate standard in this case, because plaintiffs face a likelihood of irreparable harm and the balance of hardships tips sharply in their favor. *See Cottrell*, 632 F.3d at 1132; *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014). Caltrans fails to seriously contest the elements of plaintiffs' prima facie case. (*Compare* ECF No. 137 at § III(C) *with* ECF No. 139 at § IV(b)(1)(a).)[1] Plaintiffs have provided ample declaration testimony regarding their disabilities, and the impact those disabilities have on the living options available to them. (ECF No. 78-3 at 2:6-10; 3:11-14; ECF No. 78-9 at 2:6-10: 3:14-18; ECF No. 78-4 at 2:2-3; 10-11; 3:23; ECF No. 78-6 at 2:2-7; 3:20-21; 4:22-23; ECF No. 78-7 at 2:3-9; 3:12-17: 4:20-25; ECF No. 128 at 2:6-7; ECF No. 129

---

[1] Caltrans improperly attempts to heighten the preliminary injunction standard citing three cases. (ECF No. 139 at 11:27-12:2.)  However, the only case that references the serious questions standard makes clear it is a viable alternative to the likelihood of success on the merits standard. (*See id.* (*citing Arc. Of California v. Douglas*, 755 F.3d 975, 993 (9th Cir. 2014)). As this "serious questions" standard requires a "lesser showing than likelihood of success on the merits," defendants' attempts to morph this back to a likelihood of success on the merits showing should thus be disregarded. *See Feldman v. Arizona Sec'y of State's Office*, 843 F.3d 366, 375 (9th Cir. 2016) (lesser showing).

1    at 3:12; ECF No. 130 at 2:7; ECF No. 131 at 3:11.)

2       Medical evidence is not required to establish the existence of a disability, and Congress has

3    explained that "the question of whether an individual's impairment is a disability in under the ADA

4    should not demand extensive analysis." 122 Stat. at 3553–54. *See also* 29 C.F.R. § 1630.1(c)(4); *Head v.*

5    *Glacier Nw. Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005), *overruled on other grounds by Murray v. Mayo*

6    *Clinic*, 934 F.3d 1101 (9th Cir. 2019).

7       Caltrans asserts it "provides no service, program, or activity" concerning housing. (*See* ECF No.

8    137 at §§ II(F); III(C)(1,3).) Caltrans has a comprehensive encampment-relocation scheme, and

9    plaintiffs—as houseless individuals currently living on Caltrans land—are "qualified" to receive its

10    benefits. (*See id.*) *See also* 42 U.S.C. § 12131(2) (defining qualified individual). Caltrans' policy and

11    practice of sweeping encampments when the only identified alternative is congregate shelter unduly

12    burdens plaintiffs, and denies them the benefit of the agency's encampment-relocation scheme. (ECF No.

13    137 at III(C)(2).)

14       **A.     The ADA's Reasonable Modification Requirement Can Preempt State Law.**

15       Caltrans asserts that allowing plaintiffs to remain on its property for a few more months would

16    conflict with California law, but even if this were true, that would not make plaintiffs' requested

17    accommodation unreasonable. Multiple courts, including the Ninth Circuit, have held that the ADA's

18    reasonable modification requirement can preempt conflicting state and local laws. *Crowder v. Kitagawa*,

19    81 F.3d 1480, 1485 (9th Cir. 1996) (holding that reasonable modification requirement of the ADA can

20    require modifying conflicting state administrative regulation). *See also Mary Jo C. v. N.Y. State & Local*

21    *Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013); *Hindel v. Husted*, 875 F.3d 344, 349 (6th Cir. 2017); *Nat'l*

22    *Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) (rejecting the argument "that the mere

23    fact of a state statutory requirement insulates public entities from making otherwise reasonable

24    modifications to prevent disability discrimination"). Indeed, "[t]he 'natural effect' of Title II's

25    'reasonable modification' requirement . . . requires preemption of inconsistent state law when necessary

26    to effectuate a required 'reasonable modification.'" *Mary Jo C.*, 707 F.3d at 163. Finally, the Court

27    previously ruled in response to this argument that "[a] federal court has the power to issue relief based on

28    federal law even if the resulting conduct is inconsistent with state or local law." (ECF No. 88 at 10:8-11.)

**B.       Reopening Seabreeze Would Not Require a Mandatory Injunction.**

This case arose as a result of Caltrans' eviction of plaintiffs from the Seabreeze encampment, and its failure to reasonably accommodate their disability-related need for additional time to find alternative shelter. (*See* ECF No. 88 at 21:22-24 (finding that "Caltrans closed the Seabreeze and Downstairs encampments in August 2021, which led to the migration of the eleven individual plaintiffs to Ashby/Shellmound and Ashby West.").) An injunction allowing plaintiffs to return to Seabreeze would return them to the *status quo ante litem*, which is "the last uncontested status which preceded the pending controversy" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Such an injunction would not be mandatory even if Caltrans were required to take affirmative action. *See Faison v. Jones*, 440 F. Supp. 3d 1123, 1131 (E.D. Cal. 2020) (holding that removing a ban on plaintiffs would restore the hay what why don't you send me on status quo "that existed before [d]efendant began its allegedly unlawful conduct.").

**C.       The Proposed Injunction does not Fundamentally Alter Caltrans' Programs.**

Allowing plaintiffs to remain at the Ashby-Shellmound locations, or moving them back to Seabreeze, does not fundamentally alter the nature of Caltrans' Facility and Services. Fundamental alteration is an affirmative defense that must be pled and proved by Caltrans. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096 (9th Cir. 2013). Caltrans has been provided $48.3 million from the General Fund for encampment relocation coordination, homeless services liaisons, and cleanup of trash and hazardous materials from encampments. (ECF No. 126, Ex. 1 at 12.) It has established a program and hired personnel to plan for housing and homelessness solutions. (ECF No. 126, Ex. 4.)[2] It has adopted an Interim Guidance, which requires it to develop relocation strategies, and anticipates encampments remaining on Caltrans property for just got a message or voicemail box has not been set up yet extended periods of time. The mere existence of encampments on its land cannot fundamentally alter its mission.

///

///

---

[2] Caltrans did not object to this evidence, and has waived any objection as to its admissibility. It did object to other portions of Plaintiffs' evidence. (See ECF No. 141.)

**D.      Caltrans Dismisses Plaintiffs' Hardships, While Exaggerating Its Own.**

Caltrans asserts that the Court's injunction has deprived Caltrans of "its ability to fully maintain the property for the benefit of 85,000,000 annual users of the adjacent highway, (ECF No. 139 at 1:9-10), without explaining how the presence of six homeless people tucked away on a barren stretch of scrub deprives 85 million drivers of anything at all. To support its argument, Caltrans repeatedly exaggerates the dangers associated with the Ashby encampments. For example, they write the "Berkeley Fire Department ("BFD") has responded to 24 fires at the encampments sites since March 2020, many involving encamped individuals' use of propane and other combustible materials." (ECF No. 139 at 8:7-9 (citing Abraham Roman's Declaration).) A review of the reports attached to Mr. Roman's declaration reveals that since March 5, 2022, there were seven incidents at the Ashby encampments involving fire, none of which involved propane. Caltrans complains about the burden of picking up trash at the encampments. (ECF No. 139 at 7:6-14.) The burden is largely self-imposed as it has refused repeatedly to provide people living at the encampments the dumpster where they could safely deposit their trash. (Declaration of Andrea Henson ¶ 34.)

**E.      Plaintiffs Demonstrate that They Will Suffer Imminent Harm if Removed.**

Caltrans attempts to re-litigate issues already addressed by the Court. It argues that the operative complaint does not allege that plaintiffs will suffer injury from defendants conduct. (ECF No. 139 at 9:27-10:1.) In response to its Motion to Dismiss raising the same issue, the Court found that "plaintiffs have adequately alleged a substantial risk of injury if the homeless encampments at issue . . . are closed. Notably, when the Downstairs and Seabreeze encampment were closed, the individual plaintiffs suffered harm." (ECF No. 112 at 4:18-21.)[3] Defendants object that plaintiffs have not made "a clear showing they are likely to suffer irreparable harm in the absence of preliminary relief," and that "[a]mple evidence introduced by plaintiffs reveals they have other places to go, but elect to remain or return to the subject Caltrans property . . .." (ECF No. 139 at 3:5-8.) There is no evidence that the plaintiffs remaining on Caltrans property "have other places to go" or have "elected" to return despite having viable alternatives.

---

[3] Defendants assert, first and foremost that "most plaintiffs do not have standing to bring the instant motion," because, "most individual plaintiffs do not even reside of the subject encampments." (ECF No. 88 at 2:7-8.) In fact, "most individual plaintiffs", six out eleven, do still reside at the encampments. (Henson Decl. ¶ 4.)

---

Kinndra Martin attempted to move to encampment at Wood Street but found the place "extraordinarily unsafe, unsanitary and unsettled." She heard "the sound of gunshots throughout the day and the night." (ECF No. 131 ¶ 3.) Jonathan James accepted an offer to move in with several formally homeless people but because of his disability – "obsessive thoughts due to anxiety and PTSD" – triggered if his movements are restricted, and had to move out and return to Ashby West. (ECF No. 129 ¶¶ 5, 6.) The plaintiffs who remain at the Ashby encampments do so because they know of no viable alternatives. Kevin Coddington writes in his declaration, "If I were evicted from Ashby West, I would not know where I would go because there is no legal place for me and my partner to stay. . . I cannot go into a congregated shelter because the living conditions would trigger my anxiety, fear and PTSD." (ECF No. 130 ¶¶ 6-7.) Alhondro Meyers likewise writes eloquently of the multiple ways in which moving again from Ashby West would be, or him, a catastrophe. (ECF No. 128 ¶¶ 9-13.)

Defendants argue that certain plaintiffs—Ms. Jackson, Ms. Martin, Mr. Brooks, Mr. Morfin, and Mr. James—"did continue to live outside the subject encampments, without harm, in the last six months, demonstrates that plaintiffs cannot show the *concrete and particularized* threat of harm." (ECF No. 139 at 17:16-17 (emphasis in original).) All we know of Mr. Morfin is that he is "living day to day on the streets and sidewalks in Richmond" and has not been seen by Ms. Henson despite her efforts to locate him. (ECF No. 142 at 11:2-3; Henson Decl. ¶ 29.) Ms. Martin indicated that when she left the Ashby encampment, she did come into harm's way. (ECF No. 131 at 2:3.) Ms. Jackson obtained housing, which is a success resulting from the preliminary injunction. Mr. Brooks was fortunate enough to be allowed to live in an RV, although he is parked on Second and Page Berkeley and therefore subject to enforcement actions by the City. (Henson Decl. ¶ 28.) The fate of these five says nothing about the level of harm that the remaining plaintiffs would face if they were evicted with no place to go.

### F. Plaintiffs Have Standing.

Defendants claim that the "operative complaint does not allege that individual plaintiffs have suffered or will suffer any specific injury from any purported conduct by defendants." (ECF No. 139 9:27-10:1.) It does. In their Motion to Dismiss, defendants made the same claim in arguing that Plaintiffs lacked standing. The Court found that "plaintiffs have adequately alleged a substantial risk of injury if the homeless encampments at issue . . . are closed. Notably, when the Downstairs and Seabreeze encampment were closed, the individual plaintiffs suffered harm." (ECF No. 122 4:18-21.)

**III.    CONCLUSION**

For the foregoing reasons, the Court should grant plaintiffs' preliminary injunction.


Dated: March 18, 2022                              SIEGEL, YEE, BRUNNER & MEHTA


                                                   By  /s/ EmilyRose Johns
                                                       EmilyRose Johns

                                                   Attorneys for Plaintiffs