DAN SIEGEL, SBN 56400
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com;
emilyrose@siegelyee.com

BRIGITTE NICOLETTI, SBN 336719
EAST BAY COMMUNITY LAW CENTER
1950 University Avenue, Suite 200
Berkeley, CA 94704
Telephone: (510) 977-2511
Email: bnicoletti@ebclc.org

ANDREA M. HENSON, SBN 331898
MOUZIS CRIMINAL DEFENSE
1819 K Street, Suite 200
Sacramento, CA 95811
Telephone: (916) 822-8702
Facsimile: (916) 822-8712
Email: hensona@jennifermouzislaw.com

OSHA NEUMANN SBN 127215
LAW OFFICES OF OSHA NEUMANN
1840 Woolsey St.
Berkeley, CA 94703
Telephone: (510) 717-8604
Email: oshaneumann@gmail.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHERE DO WE GO BERKELEY, on behalf of itself and those it represents; RONNIE BROOKS; JASON MILLER; KINNDRA MARTIN; KEVIN CODDINGTON; JONATHAN JAMES; MARIAH JACKSON; SARAH TEAGUE; TERRY LEE WALKER; JOSE MORFIN; ALEJANDRO MEYERS; and SHAWNA GARCIA,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CALIFORNIA DEPARMENT OF TRANSPORATION (Caltrans), et. al<br><br>　　　　Defendants. | Case No.: 21-CV-04435-EMC<br><br>**PLAINIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:　May 25, 2023<br>Time:　1:30 p.m.<br>Ctrm:　5 – 17th Floor<br>　　　　450 Golden Gate Avenue,<br>　　　　San Francisco, CA 94102 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on May 25, 2023, at 1:30 p.m. in Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, plaintiffs Where Do We Go Berkeley, Ronnie Brooks, Jason Miller, Kinndra Martin, Kevin Coddington, Jonathan James, Mariah Jackson, Sarah Teague, Terry Lee Walker, Jose Morfin, Alejandro Meyers, and Shawna Garcia will, and hereby do, move the Court for an order awarding them attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

This motion is made pursuant to Federal Rule of Civil Procedure, Rule 54(d)(2)(a) and Local Civil Rule 54-4. This motion is further based on this Notice, the Memorandum of Points and Authorities below, the declarations of Dan Siegel, EmilyRose Johns, Osha Neumann, Andrea Henson, Brigitte Nicoletti, Thomas P. Zito, and P. Bobby Shukla filed herewith and all exhibits attached thereto, the concurrently filed request for judicial notice and supporting declaration, the Court's file in this matter, and on such oral and/or documentary evidence as may be presented at the hearing of this motion.

1

## Table of Contents

2  I.  INTRODUCTION ................................................................................................................. 1

3  II.  STATEMENT OF FACTS ................................................................................................. 3

4  III. ARGUMENT ...................................................................................................................... 5

5      A.  Plaintiffs are Entitled to Recover Their Reasonable Attorneys' Fees. .......................... 5

6      B.  Issuance of TRO and Two Preliminary Injunctions Render Plaintiffs the Prevailing
           Party. ............................................................................................................................ 6

7      C.  Plaintiffs' Full Lodestar is Presumptively Reasonable and the Billing Discretion
8          Exercised by Counsel Supports the Reasonableness of Plaintiffs' Request. ................ 9

9      D.  Counsels' Hourly Rate is the Market Rate for Attorneys Doing Similar Work in the
           Bay Area. .................................................................................................................... 11

10     E.  Plaintiffs are Entitled to an Award of Costs. ............................................................. 15

11 IV. CONCLUSION ................................................................................................................ 16

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Authorities

**FEDERAL CASES**

*Andrews v. Equinox Holdings, Inc.,*
    570 F. Supp. 3d 803 (N.D. Cal. 2021) ........................................................................ 15

*Armstrong v. Davis,*
    318 F.3d 965 (9th Cir. 2003) ..........................................................................8, 9, 10

*Barrios v. California Interscholastic Fed'n,*
    277 F.3d 1128 (9th Cir. 2002) ................................................................................ 5

*Blum v. Stenson,*
    465 U.S. 886 (1984) ........................................................................................... 13

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,*
    532 U.S. 598 (2001) ............................................................................................. 6

*Chabner v. United of Omaha Life Ins. Co.,*
    1999 WL 33227443, *1 (N.D. Cal. Oct. 12, 1999) .................................................... 9

*City of Riverside v. Rivera,*
    477 U.S. 561 (1986) ........................................................................................... 13

*Dang v. Cross,*
    422 F.3d 800 (9th Cir. 2005) ............................................................................... 15

*Davis v. City & Cty. of S.F.,*
    976 F.2d 1536 (9th Cir. 1992) .............................................................................. 12

*Democratic Party of Wash. State v. Reed,*
    388 F.3d 1281 (9th Cir. 2004) ............................................................................. 10

*F. v. Blue Shield of California,*
    2016 WL 1059459, at *1 (N.D. Cal. Mar. 17, 2016) ................................................ 15

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ............................................................................................. 6

*Ferland v. Conrad Credit Corp.,*
    244 F.3d 1145 (9th Cir. 2001) ............................................................................... 9

*Fischer v. SJB-P.D. Inc.,*
    214 F.3d 1115 (9th Cir. 2000) ............................................................................... 6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
    886 F.2d 1545 (9th Cir. 1989) ............................................................................. 10

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .................................................................................. 15

*Hasbrouck v. Texaco, Inc.,*
    879 F.2d 632 (9th Cir. 1989) ................................................................................ 9

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ..........................................................................................5, 6

*Herrington v. County of Sonoma,*
 883 F.2d 739 (9th Cir.1989) ........................................................................................ 6

*Hum. Rts. Def. Ctr. v. Cnty. of Napa,*
 2021 WL 1176640, at *1 (N.D. Cal. Mar. 28, 2021) ............................................ 14, 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
 2020 WL 4212811, at *1 (N.D. Cal. July 22, 2020) ................................................... 14

*Jankey v. Poop Deck,*
 537 F.3d 1122 (9th Cir. 2008) ...................................................................................... 5

*Lovell v. Chandler,*
 303 F.3d 1039 (9th Cir. 2002) .................................................................................... 16

*Morales v. City of San Rafael,*
 96 F.3d 359 (9th Cir. 1996) .......................................................................................... 9

*Moreno v. City of Sacramento,*
 534 F.3d 1106 (9th Cir. 2008) ...................................................................................... 9

*Nat'l Org. for Women v. Bank of Cal., Nat'l Ass'n.,*
 680 F.2d 1291 (9th Cir. 1982) .................................................................................... 15

*Newman v. Piggie Park Enters., Inc.,*
 390 U.S. 400 (1968) ...................................................................................................... 6

*Perdue v. Kenny A. ex rel. Winn,*
 559 U.S. 542 (2010) ...................................................................................................... 9

*Prison Legal News v. Schwarzenegger,*
 608 F.3d 446 (9th Cir. 2010) ...................................................................................... 12

*Student A. v. Berkeley Unified Sch. Dist.,*
 2021 WL 6332352, at *1 (N.D. Cal. Nov. 4, 2021) ..................................................... 14

*Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.,*
 489 U.S. 782 (1989) ...................................................................................................... 7

*Thompson v. Gomez,*
 45 F.3d 1365 (9th Cir. 1995) ........................................................................................ 9

*Watson v. Cty. of Riverside,*
 300 F.3d 1092 (9th Cir. 2002) ................................................................................... 6, 7

*Where Do We Go Berkeley v. California Dep't of Transportation,*
 32 F.4th 852 (9th Cir. 2022) ........................................................................................ 5

*Wit v. United Behav. Health,*
 578 F.Supp.3d 1060 (N.D. Cal. 2022) ........................................................................ 14

**STATUTES**

2 U.S.C. § 3613(c)(2) ........................................................................................................ 15

28 C.F.R. § 35.175 ............................................................................................................ 16

42 U.S.C. § 12205 ........................................................................................................ 5, 16

**RULES**

Fed. R. Civ. P. 54(d) ..................................................................................................... 15

1

## I.    INTRODUCTION

Plaintiffs Where Do We Go Berkeley, Ronnie Brooks, Jason Miller, Kinndra Martin, Kevin Coddington, Jonathan James, Mariah Jackson, Sarah Teague, Terry Lee Walker, Jose Morfin, Alejandro Meyers, and Shawna Garcia prevailed in their civil rights action against the California Department of Transportation ("Caltrans"). Plaintiffs achieved a substantial amount of the relief that they set out to achieve by securing two preliminary injunctions affording them the reasonable accommodation of more time to avail themselves of the benefits of Caltrans' homeless encampment removal program. This action, brought during the height of the COVID-19 pandemic, sought to and did enforce plaintiffs' rights under the Americans with Disabilities Act ("ADA") to reasonable accommodations in defendants' Interim Guidance on Homeless Encampments, which had committed to connecting homeless individuals to local partners to find individual housing opportunities or to find alternative state land for people experiencing homelessness to reside on. As individuals with disabilities, plaintiffs required more time to avail themselves of the benefits of the program.

Originally, six plaintiffs who resided at the Ashby Shellmound encampment secured a temporary restraining order against Caltrans, which afforded them enough time to locate and move to accessible housing with the assistance of Caltrans' local partners. Following Caltrans' removal of other nearby encampments, eleven plaintiffs forced to move to the newly vacant Ashby Shellmound encampment were once again threatened with removal. The eleven plaintiffs substituted in and sought injunctive relief from this Court, requesting a delay in Caltrans' enforcement action so that they—persons with disabilities whose physical and/or mental health disabilities impacted the speed with which they could be connected to suitable housing options— could equally benefit from Caltrans' program. By securing two preliminary injunctions that delayed Caltrans' enforcement action for over seven months, the individual plaintiffs and sixteen others impacted by the Court's orders were able to connect with local partners and take advantage of the benefits of Caltrans' program, achieving nearly the full relief they sought in their complaint.

After the first preliminary injunction expired by its own terms and plaintiffs had received the full benefit of the delay, the Ninth Circuit concluded that the length of the delay—six months— materially altered Caltrans' program. Critically, the Ninth Circuit concluded something long-

resisted by Caltrans. The appellate court concluded that Caltransd operated a program, activity, or service when clearing homeless encampments and the ADA required Caltrans to reasonably accommodate persons who it seeks to remove from its land. By the time that order was issued by the Ninth Circuit, this Court had issued a second preliminary injunction, which remained in effect until its expiration on April 30, 2022, with no challenge by Caltrans.

In October 2022, Caltrans ended its Interim Guidance on Homeless Encampments mooting plaintiffs' claims. However, by the expiration of the second preliminary injunction, plaintiffs had achieved nearly all of the relief they set out to achieve—the reasonable accommodation of more time so that they, as persons with disabilities, may equally benefit from Caltrans' program. The two preliminary injunction orders, from which plaintiffs benefitted fully, materially altered the relationship between plaintiffs and Caltrans and are sufficient to render plaintiffs the prevailing party under the ADA. As the prevailing party, plaintiffs should be awarded attorneys' fees and costs for their counsel's work in this matter.

Plaintiffs seeks $609,945.35 in fees, calculated using the lodestar method and exercising billing discretion to reduce fees and in the case of Disability Rights Advocates and Mr. Siegel, waive fees entirely, and $5,800.77 in costs. The below chart explains the sought rate, hours spent, and lodestar for each attorney, plus adjustments.[1]

| Attorney | Hourly Rate | Hours Spent | Lodestar | Adjustment | Total After Adjustment |
|---|---|---|---|---|---|
| Osha Neumann | $825 | 485.9 | $400,867.50 | 10 percent reduction | $360,779.85 |
| Dan Siegel | $1,087 | 23.1 | $25,109.70 | waive fees | $0 |
| EmilyRose Johns | $675 | 256.8 | $173,340 | None | $173,340 |
| Andrea Henson | $365 | 119.9 | $43,763 | None | $43,763.50 |
| Brigitte Nicoletti | $340 | 94.3 | $32,062 | None | $32,062 |
| **Totals** | | 980 | $675,142.70 | | $609,945.35 |

---

[1] This does not include the lodestar for DRA, which is $$184,206.50, and which they are waiving entirely. (Declaration of Thomas P. Zito in Support of Plaintiffs' Motion for Attorneys' Fees and Costs, ¶ 6.)

*Where Do We Go Berkeley v. Caltrans*, No. 21-CV-04435-EMC
Plaintiffs' Motion for Attorneys' Fees and Costs - 2

Plaintiffs seek an award of their reasonable attorneys' fees charged at the prevailing market rate.

## II.   STATEMENT OF FACTS

During the height of the COVID-19 pandemic, Caltrans began evicting homeless encampments from land owned by the state but resided on for years by homeless residents. The homeless residents who lived in these encampments were persons with disabilities who were not offered accommodations or alternative, safe, and accessible places to reside once evicted from the public lands. (ECF Nos. 77, 78.) Caltrans' efforts to evict the homeless residents without offering an alternative place to go violated the nation-wide COVID-19-related guidance issued by the Centers for Disease Control and Prevention and Caltrans' own interim guidance on addressing homeless encampments during COVID-19. (ECF Nos. 77, 78.) When Caltrans noticed its intent to evict the encampment at the Ashby Shellmound in Emeryville, California, an encampment occupied by approximately 23 residents and serviced by the non-profit Where Do We Go Berkeley, this action commenced. (ECF No. 1.) The Court issued a temporary restraining order preventing Caltrans from removing the plaintiffs and others from the encampment until the Motion for Preliminary Injunction could be heard. (ECF No. 20.)

As a result of the temporary restraining order, the six original individual plaintiffs and the approximately 17 other residents obtained full relief. Caltrans' local partners worked to ensure that each plaintiff was able to relocate to individual housing, and the Ashby Shellmound encampment was vacated. (ECF No. 46.) The litigation would have concluded there had Caltrans ended its efforts to clear encampments during the pandemic without making offers of housing. However, after closing the encampment at Ashby Shellmound, Caltrans closed two other longstanding encampments in Berkeley—the "Seabreeze" encampment and the "Downstairs" encampment, both of which were located just to the north of the Ashby Shellmound. (ECF No. 77.) Caltrans again failed to offer accessible housing to the residents in the Seabreeze and Downstairs encampments, and when those closures were effected, residents had no other choice but to relocate. (ECF No. 77.)

Plaintiffs Ronnie Brooks, Kinndra Martin, Kevin Coddington, Jonathan James, Mariah Jackson, Sarah Teague, Terry Lee Walker, Jose Morfin, Alejandro Meyers, and Shawna Garcia found the now vacant Ashby Shellmound and land to the east (known in this litigation as Ashby

East). (ECF No. 77.) Plaintiff Jason Miller moved to some nearby train tracks fearing further evictions by Caltrans. (ECF No. 77.) These eleven plaintiffs sought to take advantage of the same Caltrans program that the six plaintiffs before them had. However, these eleven plaintiffs, with physical and/or mental health disabilities, required more time to find connections to housing and resources. (ECF No. 77.) Plaintiffs sought a preliminary injunction delaying Caltrans' enforcement actions for six months so that they too could connect with Caltrans' local partners and find accessible housing or shelter options. (ECF No. 78.)

On September 27, 2021, after extensive briefing and the Court issued a preliminary injunction effective through March 23, 2022 that enjoined Caltrans from evicting plaintiffs from their encampments and granting plaintiffs more time to seek the benefits of Caltrans' program. (ECF No. 88.) This injunction remained in effect until March 23, 2022 and expired under its own terms. (ECF No. 88.)

On October 26, 2021, nearly a month after the Court issued the September 27, 2021 preliminary injunction, Caltrans filed a notice of appeal with the Ninth Circuit seeking an order overturning the Court's order. (ECF No. 96.) Although the Ninth Circuit allows for an expedited briefing schedule pursuant to a motion showing good cause, such as "in the absence of expedited treatment, irreparable harm may occur or the appeal may become moot", *see* Federal Rules of Appellate Procedure 3-3(a), 27-12, Caltrans did not seek to expedite the appeal.

On November 27, 2021, Caltrans filed a motion to dismiss plaintiffs' second amended complaint. (ECF No. 90.) Plaintiffs' opposed this motion. (ECF No. 93.) After a contested hearing on their motion, the Court dismissed plaintiffs' state created danger claim based on state law; the ADA damages claim against Caltrans, and the state created danger claim against Defendant El-Tawansy, the District for Director of Caltrans. The Court allowed plaintiffs to proceed on all their other claims for injunctive and declaratory relief. (ECF No. 112.)

On March 5, 2022, plaintiffs moved for a second preliminary injunction to extend the time for enforcement by four months due to unforeseen setbacks in the County of Alameda's coordinated entry system and the operation of one of the housing options for plaintiffs. (ECF No. 125.) The Court held an evidentiary hearing on March 23, 2022. (ECF No. 157.) Following three

and a half hours of testimony (ECF No. 157), the Court issued a second preliminary injunction, preventing Caltrans from removing plaintiffs for nearly a month and a half more. (ECF No. 152.)

On April 15, 2022, the Ninth Circuit heard Caltrans' appeal. By that time, the September 27, 2021, injunction had expired under its own terms and plaintiffs had reaped the full benefit of the Court's Order.  On appeal, Caltrans argued that the homeless encampment sweeps that it conducted pursuant to its Interim Guidance were not a program, activity, or service to which the ADA applied. The Ninth Circuit disagreed—finding that the ADA properly applied to Caltrans' encampment sweeps. *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 861 (9th Cir. 2022). The Ninth Circuit determined that on the record before it, which addressed only the September 27, 2021 injunction, that a six-month delay in the eviction of plaintiffs was a fundamental alteration to the program that Caltrans operated. *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 862 (9th Cir. 2022). Although it had the opportunity to do so, Caltrans never appealed the second preliminary injunction, and that injunction too expired under its own terms on April 30, 2022.

In October 2022, Caltrans replaced its Interim Guidance on Homeless Encampments, which modified its program and mooted plaintiffs' claims and leaving plaintiffs with only their fees and costs to settle.

## III.  ARGUMENT

### A.  Plaintiffs are Entitled to Recover Their Reasonable Attorneys' Fees.

Under the Americans with Disabilities Act, a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee including litigation expenses, and costs." 42 U.S.C. § 12205. *See also Jankey v. Poop Deck*, 537 F.3d 1122, 1129 (9th Cir. 2008). "A prevailing plaintiff under the ADA should 'ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Jankey*, 537 F.3d at 1130 (quoting *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)) (other citations omitted).

Such fee-shifting provisions are intended "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted). As the Supreme Court has recognized, "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to

advance the public interest by invoking the injunctive powers of the federal courts." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam). Thus, in civil rights actions such as this one, recovery of a reasonable fee award is "the rule rather than the exception." *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir.1989) (order) (internal quotation marks omitted). *See also Hensley*, 461 U.S. at 429 (prevailing civil rights plaintiffs "should ordinarily recover" their attorneys' fees "unless special circumstances would render such an award unjust").

### B. Issuance of TRO and Two Preliminary Injunctions Render Plaintiffs the Prevailing Party.

Plaintiffs prevail where they receive an order from the court that "'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). *See also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001) (prevailing party secures a change to defendants' behavior that results from "judicial imprimatur".) Where a plaintiff's complaint seeks injunctive relief, a preliminary injunction that achieves that relief suffices to render the plaintiff the prevailing party. *Watson v. Cty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*.") "This is so even though he failed to prevail on his other claims." *Id.*

*Watson* is particularly instructive here. In that matter, the plaintiff sought money damages and to enjoin his former employer from using a compelled statement against him at an arbitration hearing over his discharge. *Id.* at 1094. He secured a preliminary injunction prohibiting the statement's use. *Id.* After two years of litigation, the court issued summary judgment against the plaintiff on all of his claims save his claim for injunctive relief based on the compelled statement. *Id.* However, since the administrative hearing had long since passed, his claim for permanent injunctive relief had become moot. *Id.* The plaintiff thereafter moved for attorneys' fees, as he had prevailed on the preliminary injunction and secured significant relief. *Id.* The court agreed, concluding that he prevailed because "Watson achieved 'some of the benefit [he] sought in bringing suit' by obtaining an injunction prohibiting the admission of the arrest report at the hearing." *Id.* (quoting *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92

(1989)). "Moreover, the injunction altered the legal relationship between the parties because it precluded the defendants from using the arrest report, which they otherwise would have been able to use, in the hearing." *Id.* at 1094–95.

Plaintiffs in this matter had three significant orders from the Court that materially altered the legal relationship between the parties and prevented its attempts to take enforcement action. The first order, issued on June 11, 2021, prevented Caltrans from removing the original six individual plaintiffs and over a dozen other residents at the encampment until the resolution of plaintiffs' motion for preliminary injunction. (ECF No. 20.) This order delayed Caltrans' eviction long enough to provide the six individual plaintiffs with time to take advantage of the housing programs offered by Caltrans' local partners and move into individual housing units. This order granted the original six individual plaintiffs and Where Do We Go Berkeley all of the relief they sought.

However, due to Caltrans' senseless evictions of two other encampments to the north of Ashby Shellmound, residents who had no other place to go relocated to the newly vacant Ashby Shellmound and Ashby East. Approximately twenty-seven homeless residents were forced to relocate to the Ashby encampments and were at risk of a second eviction as Caltrans desired to re-clear the Ashby Shellmound and Ashby East encampments. Eleven of those residents became plaintiffs in this matter and requested a preliminary injunction ordering Caltrans to provide more time before enforcement for them to work with Caltrans' local partners to secure accessible housing, as provided in Caltrans' COVID-era program and detailed in its Interim Guidance.

On September 27, 2021, the Court issued the first of two preliminary injunctions. The first injunction lasted through March 23, 2022 and halted any enforcement action Caltrans sought to take. Although Caltrans appealed the injunction, it waited nearly a month to even notice its appeal, failed to expedite the briefing, and as a result, the injunction expired under its own terms before it was ever heard by the Ninth Circuit. And while the Ninth Circuit found the six-month delay constituted a fundamental alteration of Caltrans program, it agreed with this Court that Caltrans operated a program and that it was bound by the ADA to make reasonable accommodations for plaintiffs. This important declaratory relief was a victory for plaintiffs. Additionally, by the time

the Ninth Circuit issued its order, the preliminary injunction had already expired and plaintiffs already benefitted.

Finally, on March 23, 2022, after an evidentiary hearing, plaintiffs secured a month and a half long preliminary injunction that was never challenged by Caltrans and expired under its own terms on April 30, 2022.

Due to these court orders, plaintiffs enjoined Caltrans' enforcement action for nearly ten months, allowing sufficient time for plaintiffs and many others to be housed or find adequate alternative shelter. Additionally, plaintiffs secured the important opinion from this Court and the Ninth Circuit that Caltrans was bound by the ADA's mandate to reasonably accommodate homeless persons with disabilities who reside on Caltrans' land.

Plaintiffs seek to recover fees for work on the preliminary injunctions because they reaped the entire benefits of the injunctions and they expired on their own terms. Like the plaintiff in *Watson*, plaintiffs achieved the result they sought—more time to avail themselves of the benefits of Caltrans' program. Plaintiffs' second amended complaint explained that Caltrans' program timeline disproportionally impacted persons with disabilities living in encampments because "they require more time and more intensive assistance because of their disabilities." (ECF No. 77, ¶¶ 9-11, 85-86.) Plaintiffs prayed for injunctive and declaratory relief and damages. (ECF No. 77, ¶ 115). Following the Court's order on Caltrans' motion to dismiss, plaintiffs' could only seek injunctive and declaratory relief. (ECF No. 112.) Plaintiffs prevailed in securing more time to take advantage of Caltrans' program, and although their entitlement to permanent injunction was mooted before they could fully litigate it, they still secured an Order from this Court that materially altered the relationship between the parties for its entire duration.

Plaintiffs also seek to recover fees from defending the September 27, 2021 injunction in the Ninth Circuit. These fees are recoverable because plaintiffs may recover for all necessary work that a reasonably prudent attorney would have undertaken. *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003). When Caltrans chose to appeal the stay in their enforcement action—focusing on the appeal instead of delivering on the promises of its Interim Guidance and failing to take advantage of expedited procedures—plaintiffs had no choice but to defend the Order. This was

necessary work that a reasonably prudent attorney would have undertaken. (See Declaration of P. Bobby Shukla in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Shukla Decl.") ¶ 13.)

### C. Plaintiffs' Full Lodestar is Presumptively Reasonable and the Billing Discretion Exercised by Counsel Supports the Reasonableness of Plaintiffs' Request.

Plaintiffs' full lodestar, calculated by multiplying the number of hours plaintiffs reasonably expended on the litigation by their reasonable hourly rate, is the presumptively reasonable attorneys' fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended by* 108 F.3d 981 (9th Cir. 1997). The current lodestar amount is $859,349.20.

"[T]he award of fees should cover 'every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar." *Armstrong*, 318 F.3d at 971 (quoting *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)). As the Ninth Circuit has recognized, lawyers have little incentive to "spend unnecessary time" on civil rights cases taken on contingency—as this one was—and in considering such cases, "the court should [generally] defer to the winning lawyer's professional judgment as to how much time [they were] required to spend."[2] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Plaintiffs' counsel devoted a total of 980 hours (not including DRA's hours) to this action through the submission of this motion—most of which were necessitated by defendants' choice to aggressively litigate this case and the realities of advocating for eleven homeless and vulnerable plaintiffs. This includes fees for work related to the present motion, for which plaintiffs are entitled to full compensation. *See Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995).

In an effort to present the most conservative fee petition possible, plaintiff's counsel has exercised billing discretion. Mr. Neumann reduced his lodestar by 10 percent. (Declaration of Osha Neumann in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Neumann Decl.") ¶

---

[2] In determining what was reasonable, courts are also mindful that there are "crucial differences between prosecuting and defending a case." *Chabner v. United of Omaha Life Ins. Co.*, No. C-95-0447-MHP, 1999 WL 33227443, *3 (N.D. Cal. Oct. 12, 1999). *See also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (per curiam) (detailing differences).

26.) Mr. Siegel waived his entitlement to fees. (Declaration of Dan Siegel in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Siegel Decl.") ¶ 24.) Mr. Siegel's waiver of fees reduces Siegel, Yee, Brunner & Mehta's fee entitlement by 12.6 percent. (Declaration of EmilyRose Johns in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Johns Decl.") ¶ 28.) In addition to these reductions, attorneys with Disability Rights Advocates ("DRA"), a 501(c)(3) non-profit public interest law firm exclusively dedicated to advancing the civil rights of people with disabilities, who served as co-counsel in this matter predominately on the Appeal in front of the Ninth Circuit, incurred $184,206.50 in fees in this case. (Zito Decl. ¶¶ 2, 6.) DRA is also waiving its entitlement to fees to support of the reasonableness of plaintiffs' requested attorneys' fees. (Zito Decl. ¶ 6.) Plaintiffs sought fee award of $609,945.35 is $249,403.85—or 29 percent—less than the $859,349.20 that constitutes counsels' full fee.

The remaining hours all encompass items of service that "at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect" plaintiffs' interest; they are thus properly part of the lodestar calculation, and should be fully compensated at plaintiffs' requested rates. *See Armstrong*, 318 F.3d at 971. This is particularly true because much of the work reflected in entries was a direct consequence of defendant's aggressive litigation decisions, and its unwillingness to resolve the matter through negotiated settlement discussions, even when it was clear that plaintiffs would receive the full benefit of the relief they sought before defendant's appeal would be heard. As the Ninth Circuit has repeatedly held, a defendant who "play[s] hardball in contesting [plaintiffs'] claims," should "bear the cost of" the additional time required to defend against an "obstructionist strategy." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). *See also Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

///

///

///

**D.    Counsels' Hourly Rate is the Market Rate for Attorneys Doing Similar Work in the Bay Area.**

Plaintiffs' counsel seeks compensation for their work on this case at the following 2023[3] hourly rates:

| Attorney | Hourly Rate | Hours Spent | Lodestar | Adjustment | Total After Adjustment |
|---|---|---|---|---|---|
| Osha Neumann | $825 | 485.9 | $400,867.50 | 10 percent reduction | $360,779.85 |
| Dan Siegel | $1,087 | 23.1 | $25,109.70 | waive fees | $0 |
| EmilyRose Johns | $675 | 256.8 | $173,340 | None | $173,340 |
| Andrea Henson | $365 | 119.9 | $43,763 | None | $43,763.50 |
| Brigitte Nicoletti | $340 | 94.3 | $32,062 | None | $32,062 |
| **Totals** | | 980 | $675,142.70 | | $609,945.35 |

Plaintiffs' counsel Mr. Neumann, Mr. Siegel, and Ms. Johns are all skilled litigators with extensive experience in advocating for the rights of people experiencing homelessness and people with disabilities. Plaintiffs' counsel Ms. Henson and Ms. Nicoletti come to the team with fewer years of experience but with exceptional skill in and dedication to working with persons experiencing homelessness.

Mr. Neumann has dedicated his entire career to advancing the rights of people experiencing homelessness, and his extensive work on this matter in building and maintaining relationships with clients experiencing homelessness, gathering evidence, and crafting winning legal arguments was invaluable. (Neumann Decl. ¶¶ 5-18.) Mr. Siegel's distinguished legal career has spanned over 50 years. (Siegel Decl. ¶ 2.) During that time he has tried over 130 jury trials and achieved stunning victories in civil rights cases. (Siegel Decl. ¶¶ 6, 10-19.). Ms. Johns has extensive knowledge in federal courts motion practice and litigation on behalf of people experiencing

---

[3] During the pendency of this matter, plaintiffs' counsel has not received a penny in fees, despite having devoted hundreds of hours to the case. To account for this delay in payment, plaintiffs are entitled to compensation at their counsel's current hourly rates. *Perdue,* 559 U.S. at 556 (explaining that compensation for delayed payment "is generally made either by basing [an] award on current rates or by adjusting the fee based on historical rates to reflect its present value") (internal quotation marks omitted)

homelessness and person with disabilities. (Johns Decl. ¶¶ 8-16, 21.) Her work in this matter was crucial in securing the preliminary injunctions issued by this Court and defeating Caltrans' motions. (Johns Decl. ¶ 20.)

Both Ms. Henson and Ms. Nicoletti utilized their unique skills and resources to advance this case. Ms. Henson used her extensive experience with persons experiencing homelessness to gather crucial evidence for plaintiffs' motions for preliminary injunction. (Declaration of Andrea Henson in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Henson Decl.") ¶ 16.) Ms. Henson also defended plaintiffs' depositions and had primary responsibility for contacting plaintiffs. (Henson Decl. ¶ 16.) Ms. Nicoletti conducted legal research and writing; drafted pleadings; helped co-counsel, witnesses, and plaintiffs prepare for hearings; and performed outreach to plaintiffs. (Declaration of Brigitte Nicoletti in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Nicoletti Decl.") ¶ 13.) Counsel exercised prudence in billing in this matter by assigning tasks appropriate for entry level attorneys to Ms. Henson and Ms. Nicoletti. (Johns Decl. ¶ 23.)

The 2023 rates sought by plaintiffs' counsel in this case are reasonable, and in line with what other highly-skilled attorneys and firms in the Bay Area charge and are awarded for similarly-complex work, as experienced Bay Area litigator P. Bobby Shukla explains in her supporting declaration. (Shukla Decl. ¶¶ 14-17.)

When determining whether requested rates are reasonable, courts judge them in comparison to rates charged by other "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community—here, the Bay Area. *Davis v. City & Cty. of S.F.*, 976 F.2d 1536, 1545-46 (9th Cir. 1992), *opinion vacated in part on unrelated grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993). *See also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (comparing sought rates to those of attorneys of comparable skill, experience, and reputation in the Northern District of California). In making this comparison, courts must look not only to the rates charged by or awarded to other civil rights attorneys and non-profit organizations, but also to the rates that private attorneys of comparable skill charge or are awarded. *Davis*, 976 F.2d at 1545-46. This is because "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a

nonprofit legal services organization." *Blum v. Stenson,* 465 U.S. 886, 894 (1984).

Similarly, rates in a civil rights matter such as this should not be reduced based on a false premise that civil rights litigation is simpler or less worthy of compensation than other forms of complex legal work. As the Supreme Court held: "Congress made clear that it intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature.*" *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (emphasis added) (quotation marks omitted) (italics in original).

An examination of recent fee awards in the Northern District of California for similar work demonstrates that counsels' requested rates are well within the market rates for similar work done by counsel of comparable competency. In February 2023, Judge Nathanael Cousins awarded similarly-experienced counsel similar rates in a case involving constitutional and statutory challenges to —including a challenge under the ADA. (See Request for Judicial Notice ("RJN"); Exhibit B to the Declaration of EmilyRose Johns in Support of Request for Judicial Notice ("Johns RJN Decl.").) Judge Cousins determined that the 2022 billing rate of $990 for William Freeman, an American Civil Liberties Union attorney who graduated in 1978, was reasonable, and that the 2022 billing rate of $803 for Annette Kirkham, a 2001 graduate and attorney with the Law Foundation of Silicon Valley, was reasonable. (RJN, Johns RJN Decl, Ex. B. at 5.) Mr. Neumann, who worked a substantial part of his career at the legal services agency East Bay Community Law Center and who graduated from law school in 1986, seeks a billing rate of $825—a rate that is in between Mr. Freeman's and Ms. Kirkham's approved rates and is reasonable based on Mr. Neumann's comparable skill and experience.

Mr. Siegel's rate of $1,087 per hour is similarly reasonable. A 1970 graduate from Berkeley Law School and named partner with Siegel, Yee, Brunner & Mehta, his rate is just slightly above that awarded to Mr. Freeman and on par or even below the rates of the far less experienced partners at King & Spaulding: Quyen Ta, 2003 graduate, was awarded a 2021 hourly rate of $1070.

and Arwen Johnson, 2006 graduate, and Kelly Perigoe, 2009 graduate, were awarded a 2022 hourly rate of $1125. (RJN, Johns RJN Decl, Ex. B. at 5.)

Judge Cousins approved a 2022 rate of $1024.61 for Senior Associate Sam Diamant, 2012 law school graduate in private practice at King & Spaulding. (RJN, Johns RJN Decl, Ex. B. at 5.) Comparatively, Ms. Johns, a 2013 graduate and Senior Associate in private practice with substantial litigation experience, seeks an exceptionally reasonable 2023 billing rate of $675. (Johns Decl. ¶¶ 3-4, 8-16, 25.)

In the same order, Judge Cousins approved billing rates of $388 for 2019 graduate Michael Trujillo of the Law Foundation of Silicon Valley. (RJN, Johns RJN Decl, Ex. B. at 5.) Ms. Henson, admitted to the California bar in 2020, and Ms. Nicoletti, a 2019 graduate, seek the reasonable rates of $365 and $340 respectively.

In 2021, Judge Jon Tigar found that hourly rates for attorneys with Disability Rights Education Defense Fund ranging from $340 to $985 were reasonable. *Student A. v. Berkeley Unified Sch. Dist.*, No. 17-CV-02510-JST, 2021 WL 6332352, at *3 (N.D. Cal. Nov. 4, 2021). Also in 2021, Judge Joseph Spero awarded attorneys with boutique civil rights firm Rosen Bien Galvan & Grunfeld similar rates—approving an hourly rate of $1,100 for Sanford Rosen, 1962 graduate, and $950 for Jeffrey Bornstein, 1981 graduate. *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021). Judge Spero awarded Senior Counsel Benjamin Bien-Kahn, a 2009 graduate, an hourly rate of $625. *Id.* In an order affirmed by the Ninth Circuit, Judge Susan Illston approved 2020 hourly rates of $450 to $900 for partners and $160 to $850 for non-partner attorneys. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022).

The rates requested by the attorneys in *Navarro v. City of Mountain View*, approved by Judge Cousins and comparable to the rates requested here, were supported by the declaration of Richard Pearl, a highly respected figure on prevailing attorneys' fees rates. *See, e.g.*, *Wit v. United Behav. Health*, 578 F.Supp.3d 1060, 1079 (N.D. Cal. 2022) ("the Court places significant weight on

Pearl's opinion"); *Hum. Rts Def. Ctr*, 2021 WL 1176640, at *11 ("Mr. Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts."); *Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 807 (N.D. Cal. 2021) ("This Court [] finds Pearl's opinions well supported and persuasive.") [4] In his December 2022 declaration, Mr. Pearl stated that the rates charged by the attorneys with the ACLU, Law Foundation of Silicon Valley, and King & Spaulding, were in the mid-range of noncontingent hourly rates charged by Bay Area attorneys who regularly engage in civil litigation of comparable complexity. (Johns RJN Decl., Ex A, ¶ 20.) The exhibits to his declaration show that in the Bay Area, the rates charged by counsel in this matter are well within the range of rates charged by comparable attorneys. (Johns RJN Decl., Ex A, at Ex. B to Pearl Decl.)

For these reasons, the Court should find that the requested rates of plaintiffs' counsel are reasonable, and that they properly form the basis for plaintiffs' lodestar.

### E.     Plaintiffs are Entitled to an Award of Costs.

Plaintiffs' counsel has submitted their itemization of recoverable costs and expenses being claimed in this litigation. (Johns Decl. Ex. B-C.) Plaintiffs seek total costs of $5,800.77. "Costs are awarded to the prevailing party in civil actions as a matter of course absent express statutory provision, 'unless the court otherwise directs.'" *Nat'l Org. for Women v. Bank of Cal., Nat'l Ass'n.*, 680 F.2d 1291, 1294 (9th Cir. 1982) (quoting Fed. R. Civ. P. 54(d)). Under 42 U.S.C. § 3613(c)(2), plaintiffs are entitled to all reasonable out-of-pocket costs incurred, including taxable costs recoverable under Federal Rule of Civil Procedure 54(d). *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994). *See also Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (affirming that reasonable "out-of-pocket expenses that would normally be charged to a fee paying client" are recoverable) (quotation marks omitted). "The ADA authorizes a court to award attorneys' fees, litigation

---

[4] Although not prepared for this case, Mr. Pearl's declaration was prepared in December 2022 and addresses Bay Area prevailing rates. Declarations prepared for other matters may be used as a part of the evidence supporting the reasonableness of requested rates. *See F. v. Blue Shield of California*, 2016 WL 1059459, at *8 (N.D. Cal. Mar. 17, 2016) (considering as evidence declarations previously filed in support of a request for attorney's fees in another case in the same district).

expenses, and costs to a prevailing party." *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (citing 42 U.S.C. § 12205; 28 C.F.R. § 35.175). This includes the cost of experts. *Id.* at 1058-59. As the prevailing party, plaintiffs' costs should be awarded, including deposition costs, printing and copying costs, and expert costs.

## IV.    CONCLUSION

For the reasons stated above, plaintiffs respectfully request that this Court award $609,945.35 in reasonable fees for the work of plaintiffs' counsel along with $5,800.77 in costs.

Dated: March 20, 2023                        SIEGEL, YEE, BRUNNER & MEHTA

By  ___/s/EmilyRose Johns_____
EmilyRose Johns

*Attorneys for Plaintiffs*