UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHERE DO WE GO BERKELEY, et al., | Case No. 21-cv-04435-EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** |
| CALIFORNIA DEPARTMENT OF TRANSPORTATION (CALTRANS), et al., | Docket No. 170 |
| Defendants. | |

The instant case involved a challenge to Defendants' attempts to evict homeless individuals from encampments located on Caltrans property or rights of way. This Court issued a preliminary injunction in favor of Plaintiffs but that injunction was vacated on appeal by the Ninth Circuit. Although the preliminary injunction was vacated, Plaintiffs now move for attorney's fees and costs based on the fact that this Court granted the preliminary injunction (plus an extension of the injunction) as well as a temporary restraining order at the outset of the case.[1] Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Plaintiffs' motion.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

The instant action was initiated by six individual plaintiffs and Where Do We Go Berkeley ("WDWG") in June 2021. At the time they filed suit, the six individual plaintiffs and WDWG also filed a motion for a TRO, *i.e.*, to prevent the closure of an encampment located on a Caltrans

---

[1] Plaintiffs seek about $624,000 in attorney's fees and about $5,800 in costs. *See* Reply at 1. Plaintiffs assert that their full attorney's fees are about $859,000 but they have reduced their fee award by about 29% (*e.g.*, some attorneys or organizations have waived their fees). *See* Mot. at 10.

United States District Court
Northern District of California

1 | right of way.  The Court granted the motion for a TRO on June 11, 2021.  *See* Docket No. 20

2 | (Order at 2) (noting, *inter alia*, that "Plaintiffs need only demonstrate serious questions going to

3 | the merits because the balance of hardships tips strongly in their favor.").  The TRO lasted until

4 | July 20, 2021, which was when a hearing on a motion for a preliminary injunction would be heard.

5 | In the meantime, the Court encouraged the parties to work together and to work with local

6 | agencies to see if they could find housing for the individual plaintiffs as this would mean the

7 | individuals would not need to live at the encampment any longer.  *See* Docket No. 20 (order).  The

8 | preliminary injunction hearing was later pushed back to late August 2021 as the parties continued

9 | to work together.  *See* Docket No. 26 (stipulation and order); Docket No. 46 (minutes).

10 |      Shortly before the preliminary injunction hearing was to take place, a first amended

11 | complaint ("FAC") was filed.  The six individual plaintiffs were no longer named plaintiffs

12 | because they had found housing or alternative arrangements for them had been made).  Only

13 | WDWG was named as a plaintiff.  The allegations in the FAC also shifted, focusing on Caltrans's

14 | recent closure of two different encampments (Seabreeze and Downstairs), which led to new people

15 | moving into the encampment at issue in the instant case.  *See* Docket No. 48 (FAC).

16 |      Because it was not clear that WDWG itself could get a preliminary injunction to stop

17 | closure of the encampment at issue, WDWG moved to amend the FAC – specifically, to add

18 | eleven new individual plaintiffs to the suit.  At the same time, WDWG moved for a new TRO

19 | (effectively, on behalf of the eleven individuals).  The Court held a hearing on the motions in early

20 | September 2021.  The Court granted both motions and set a hearing on a motion for a preliminary

21 | injunction in late September 2021.  *See* Docket No. 70 (minutes).

22 |      On September 23, 2021, the Court granted the motion for a preliminary injunction based

23 | on Plaintiffs' ADA claim.  *See* Docket No. 88 (Order at 11) (taking note of Plaintiffs' position

24 | that, under Title II, "Caltrans has implemented a 'program' regarding the removal of homeless

25 | encampments (*e.g.*, as reflected in the Interim Guidance) and, under Title II, that program must

26 | give reasonable accommodation to disabled persons because they have more difficulty in

27 | relocating and/or finding housing and therefore need more time before being evicted.").  The

28 | preliminary injunction was set to expire in six months – *i.e.*, on March 23, 2022.  *See* Docket No.

88 (Order at 13).

Defendants then moved to dismiss the second amended complaint ("SAC").  They also appealed the preliminary injunction order.  *See* Docket No. 90 (motion); Docket No. 96 (notice).

In December 2021, the Court granted in part and denied in part the motion to dismiss.  The Court dismissed several claims but allowed the ADA claim against Caltrans for injunctive relief (not damages) to proceed.  *See* Docket No. 112 (order).

Shortly before the preliminary injunction was due to expire in March 2022, Plaintiffs filed a new motion for a preliminary injunction.  The Court granted in part and denied in part that motion.  It did not, as Plaintiffs requested, allow for the Seabreeze encampment to be (in effect) reopened.  Nor did the Court extend the preliminary injunction for another four months, as Plaintiffs requested.  However, the Court did give a brief extension of the preliminary injunction – for about a month, until April 30, 2022.  *See* Docket No. 152 (order).

About two weeks before the extended preliminary injunction was due to expire, the Ninth Circuit issued an order vacating the Court's original order granting a preliminary injunction (even though that injunction had technically expired).  *See* Docket No. 153 (order).  On April 27, 2022, the Ninth Circuit issued its full decision.

In its order, the court began by explaining that, "[a]lthough the appealed order expired before argument, . . . the dispute is not moot because it is capable of repetition, yet evading review."  Docket No. 154 (Order at 8).

The Ninth Circuit then noted that, contrary to what Caltrans argued, the agency did have a "program" with respect to homeless encampments for purposes of the ADA.  However, the program was

> far more limited than Plaintiffs contend or the district court held.
> The Interim Guidance states that Caltrans collaborates with local
> partners to help people at the encampments connect with critical
> services and housing solutions.  But Caltrans itself does not provide
> those services; it "is not the appropriate entity to provide social
> services or relocation assistance."

Docket No. 154 (Order at 17).  Moreover, Caltrans's program included the clearing of encampments, and how Caltrans cleared an encampment depended on the encampment's priority

level.  *See* Docket No. 154 (Order at 17).  As part of the program, Defendants had designated the encampment at issue a level 1 encampment which meant that the encampment posed a critical safety concern and thus, as a general matter, could be vacated within 72 hours' notice.  *See* Docket No. 154 (Order at 3-4, 17-18) (contrasting level 1 encampments with level 2, 3, and/or 4 encampments).  In effect, the Ninth Circuit defined the applicable program in terms of level 1 and not anything more.

Finally, the Ninth Circuit held that this Court's preliminary injunction which delayed Caltrans from clearing the level 1 encampment at issue was a fundamental alteration of Caltrans's program.  *See* Docket No. 154 (Order at 19) (stating that "a six-month delay is a fundamental alteration of Caltrans's programs, which provide for expedient clearing of level 1 encampments and include, when possible, 72 hours' notice and coordination with local partners").  Thus, there was *not* a serious question as to whether Caltrans had violated the ADA.[2]

In October 2022, about six months after the Ninth Circuit's decision, Caltrans ended its Interim Guidance on Homeless Encampments.  According to Plaintiffs, because Caltrans ended its program (replacing the Interim Guidance with a different program), their case was thereby mooted.  *See* Mot. at 2, 5.

## II.   DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 54 provides that "[a] claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).  Rule 54 further provides that, "[u]nless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of

---

[2] The Ninth Circuit also concluded that this Court had erred by holding that "Plaintiffs had established a plausible claim that they were entitled to relief under the second clause of Title II, which provides that a public entity cannot subject a disabled person to discrimination."  Docket No. 154 (Order at 20).  "Title II's second clause precludes intentional discrimination *in an entity's programs*."  Docket No. 154 (Order at 21) (emphasis in original).  Thus, the Court "erred by supporting its injunction on what it deemed a 'plausible claim' that Caltrans must delay clearing the encampments even if it provided no program under the ADA.  No injunction can issue based on only a plausible claim – and Plaintiffs' claims were not plausible."  Docket No. 154 (Order at 21-22).

United States District Court
Northern District of California

1  judgment." Fed. R. Civ. P. 54(d)(2)(B).

2  B.     Procedural Objection

3          As an initial matter, Defendants argue that Plaintiffs' fee motion is premature because no

4  final judgment has been entered.  *See* Opp'n at 6.  Defendants acknowledge Plaintiffs'

5  representation, made in their motion, that they believe their claims are now moot.  Nonetheless,

6  Defendants maintain that it "is an essential procedural step" for there to be a final judgment first.

7  Opp'n at 7.  Defendants note that a final judgment could be issued if Plaintiffs were to move to

8  dismiss their case.

9          In response, Plaintiffs argue that a final judgment is not needed before a party can move

10  for attorneys' fees.  They note that Rule 54 specifies the *latest* date by which a motion may be

11  filed but it does not preclude an earlier filing.  They also point to case law, including that from the

12  Supreme Court, indicating that pre-final judgment fee motions are not automatically barred.  *See,*

13  *e.g.*, *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989) (in a § 1988

14  case, stating that "Congress cannot have meant 'prevailing party' status to depend entirely on the

15  timing of a request for fees: A prevailing party must be one who has succeeded on any significant

16  claim affording it some of the relief sought, either *pendente lite* [*i.e.*, pending litigation] or at the

17  conclusion of the litigation"); *see also Hutchinson v. Patrick*, 636 F.3d 1, 12 (1st Cir. 2011) (in

18  ADA case, stating that "an award under a federal fee-shifting statute may sometimes be

19  appropriate prior to the entry of a final judgment[;] [s]uch an award is proper, pendente lite,

20  'where a party "has established  his entitlement to some relief on the merits of his claims"' and

21  "[t]hus, prevailing party status is not restricted to a party who has secured a favorable final

22  judgment"); *Dupuy v. Samuels*, 423 F.3d 714, 719 (7th Cir. 2005) (in a § 1988 case, stating that

23  "'[a] district court has the power to award fees before the entry of a final judgment'"; "[w]e have

24  interpreted the Supreme Court's decisions on interim fee awards to mean that, 'once a plaintiff

25  obtains substantive relief that is not defeasible by further proceedings, he can seek interim fees and

26  the district court has the power to award them'"); *LaRouche v. Kezer*, 20 F.3d 68, 71-72 (2d Cir.

27  1994) (in § 1988 case, stating that "[t]he definition of prevailing parties is not limited to those who

28  obtain a favorable final judgment following a full trial";  indeed, "a court may award attorney's

United States District Court
Northern District of California

5

1   fees pendente lite to a party who has secured some relief on the merits either at trial or on appeal,"

2   although "[t]he Supreme Court has declined to hold . . . that a party who litigates to judgment and

3   loses on all of its claims prevails within the meaning of the attorney's fees statute").

4          Given the authority cited above, the Court rejects Defendants' procedural objection.  The

5   Court also notes that, as a practical matter, waiting for a final judgment would elevate form over

6   substance.  It is clear from the parties' papers that they both consider this case to effectively be

7   over.

8   C.     Prevailing Party

9          The Court thus turns to the merits of Plaintiffs' fee motion.  It begins its analysis by

10  considering the language of the ADA provision that provides for attorney's fees.

11         Under the ADA, "[i]n any action or administrative proceeding commenced pursuant to this

12  Act, the court or agency, in its discretion, may allow the prevailing party, other than the United

13  States, a reasonable attorney's fee, including litigation expenses, and costs . . . ."  42 U.S.C. §

14  12205.  Although the statute refers to a court's "discretion," the Ninth Circuit has noted that, "'in

15  civil rights cases, the district court's discretion is limited,'" and, "[a] prevailing plaintiff under the

16  ADA "'should ordinarily recover an attorney's fee unless special circumstances would render such

17  an award unjust.""'  *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008).

18         The critical issue in the instant case is whether Plaintiffs should be deemed the "prevailing

19  party."  For a party to prevail, it must (1) obtain a "material alteration of the legal relationship of

20  the parties" that is (2) "judicially sanctioned."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't

21  of Health & Human Res.*, 532 U.S. 598, 604-05 (2001); "'The touchstone of the prevailing party

22  inquiry' . . . is 'the material alteration of the legal relationship of the parties in a manner which

23  Congress sought to promote in the fee statute.'"  *Sole v. Wyner*, 551 U.S. 74, 82 (2007).

24         In the instant case, Plaintiffs argue that they are prevailing parties because the Court issued

25  a TRO for the original six individual plaintiffs and then issued a preliminary injunction, as well as

26  an extended preliminary injunction, in favor of the eleven individual plaintiffs that followed.  *See*

27  Mot. 6; *see also* Reply at 3 (noting that "Plaintiffs secured a temporary restraining order ('TRO')

28  and two preliminary injunctions, the benefits of which they fully reaped").  According to

Plaintiffs,

> [d]ue to these court orders, plaintiffs enjoined Caltrans' enforcement action for nearly ten months [from June 2021 to April 2022], allowing sufficient time for plaintiffs and many others to be housed or find adequate alternative shelter.  Additionally, plaintiffs secured the important opinion from this Court and the Ninth Circuit that Caltrans was bound by the ADA's mandate to reasonably accommodate homeless persons with disabilities who reside on Caltrans' land [*i.e.*, because Caltrans had a "program" for purposes of the ADA].

Mot. at 8.  Plaintiffs add that, "although their entitlement to [a] permanent injunction was mooted before they could fully litigate it, they still secured an Order from this Court that materially altered the relationship between the parties for its entire duration."  Mot. at 8.

The Court is not persuaded.  As an initial matter, the Court notes that in cases in which fees have been awarded, the prevailing party succeeded in some way *on the merits*, thereby leading to a material alteration of the legal relationship between the parties.  *See Hutchinson*, 636 F.3d at 12  (in ADA case, noting that fees may be awarded "'where a party "has established  his entitlement to some relief on the merits of his claims"'"); *Dupuy*, 423 F.3d at 719 (in a § 1988 case, stating that a party may seek fees when it "'obtains substantive relief that is not defeasible by further proceedings'"); *LaRouche*, 20 F.3d at 71-72 (in § 1988 case, stating "a court may award attorney's fees pendente lite to a party who has secured some relief on the merits either at trial or on appeal").  Consistent with this approach, the Supreme Court in *Sole v. Wyner* concluded that attorney's fees should not be awarded where the plaintiff succeeded in obtaining preliminary injunctive relief but then ultimately failed to get permanent injunctive relief – *i.e.*, lost on the merits.  The Court underscored that the preliminary injunction was simply

> fleeting success [that] did not establish that she prevailed on the gravamen of her plea for injunctive relief – *i.e.*, her charge that the state officials had denied her and other participants in the peace symbol display "the right to engage in constitutionally protected expressive activities."  Prevailing party status . . . does not attend achievement of a preliminary injunction that is *reversed, dissolved, or otherwise undone* by the final decision in the same case.

*Id.* (emphasis added).  Ultimately,

> [t]he final decision in [the plaintiff's] case rejected the same claim she advanced in her preliminary injunction motion: that the state law banning nudity in parks was unconstitutional as applied to

United States District Court
Northern District of California

> expressive, nonerotic nudity.  At the end of the fray, Florida's
> Bathing Suit Rule remained intact, and [the plaintiff] had gained no
> enduring "chang[e] in the legal relationship" between herself and the
> state officials she sued."

*Id.* at 86.  In other words, "[a] plaintiff who 'secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her],' has '[won] a battle but los[t] the war.'"[3]  *Id.*

The instant case, of course, is distinguishable from *Sole* in that, here, no decision was ever reached on permanent injunctive relief; no final judgment was rendered.  Furthermore, in *Sole*, the Supreme Court explicitly stated that it was expressing "no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees."  *Id.*  But this statement in *Sole* does not dispense with the principle that, in order for a party to prevail, it must prevail *on the merits*.

Here, Plaintiffs cannot fairly be deemed to have prevailed on the merits given that the Ninth Circuit vacated the preliminary injunction not on, *e.g.*, a non-merits based finding regarding the balance of hardships, but on the basis that the Plaintiffs had failed to raise even a serious question on the merits.  The Ninth Circuit's decision in this case effectively rejected the merits of Plaintiffs' position.

Plaintiffs protest that they succeeded *in part* on the merits because Defendants took the position that Caltrans did not have any program subject to the ADA, and the Ninth Circuit rejected that argument.  But Plaintiffs cannot be said to have prevailed because, even if the Ninth Circuit recognized in principle that Caltrans had a program subject to the ADA, winning on a part of one issue that did not lead to a victorious result does not make a plaintiff a prevailing party.  For instance, if a party establishes standing but then loses on the merits, it is not a prevailing party.  Similarly, a party establishing a defendant is covered by a statute but fails to prove the statute is

---

[3] The Ninth Circuit case on which Plaintiffs rely is consistent with *Sole*.  *See Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (in pre-*Sole* decision, stating that "there will be occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him – a case of winning a battle but losing the war[;] [t]he plaintiff would not be a prevailing party in that circumstance").

United States District Court
Northern District of California

violated is not a prevailing party.   Here, merely establishing Caltrans had a "program" did not confer prevailing party status on Plaintiffs, especially since the Ninth Circuit defined that program narrowly, so narrowly that it resulted in the appellate court finding the injunctive relief fundamentally altered the program.   In the final analysis, there was no material alteration of the legal relationship of the parties since, at the end of the day, Caltrans did not have to do anything different vis-à-vis Plaintiffs.   *See Makekau v. Hawaii*, 943 F.3d 1200, 1203 (9th Cir. 2019) ("To qualify as a 'prevailing party' under a fee-shifting statute, a plaintiff must obtain 'actual relief on the merits' that 'materially alters the legal relationship between the parties *by modifying the defendant's behavior in a way that directly benefits the plaintiff*.'") (emphasis added).

In their reply brief, Plaintiffs note that declaratory relief can materially alter the legal relationship of parties.   *See Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) ("A plaintiff 'prevails,' we have held, 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'  And we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test.").   Plaintiffs assert: "But for the mooting of the case, plaintiffs could have pursued the case on the merits and received a declaratory judgment that the ADA applied to Caltrans' program."   Reply at 6.   There are several problems with Plaintiffs' position.

First, although Plaintiffs did, in the prayer for relief for their second amended complaint, *see* Docket No. 77 (second amended complaint), ask for declaratory relief, they never specified what exact declaratory relief they sought.   They did not specify that they were asking for a declaration that Caltrans had a program under the ADA.

Second, even if that was the declaration sought by Plaintiffs, they would lack standing to seek such a declaration.   Caltrans closed the encampment since the Ninth Circuit's order had held that the preliminary injunction, which delayed Caltrans from clearing the encampment, was a fundamental alteration of Caltrans's program.   *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 709 (9th Cir. 2020) ("A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.") (internal quotation marks omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, Plaintiffs' remaining arguments all lack merit. For instance, the fact that Plaintiffs managed to get the full benefit from the preliminary injunction before it was vacated, *see* Reply at 5 (arguing that "plaintiffs fully benefited from this [preliminary] injunction before it was heard by the Ninth Circuit"; this preliminary injunction "expired under its own terms before the Ninth Circuit heard the case"), does not alter the fact that the preliminary injunction was still vacated based on the merits. In addition, because the Ninth Circuit vacated the preliminary injunction, this Court's extension of the preliminary injunction was essentially meaningless (in spite of Defendants' failure to formally challenge that extension). Finally, to the extent Plaintiffs suggest they prevailed on the merits with respect to their TRO, the Court does not agree. The TRO was granted because the balance of hardships tipped sharply in Plaintiffs' favor and there were serious questions going to the merits. This by itself is not enough to amount to prevailing on the merits; it did not alter the legal relationship between the parties.

### III.    CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' motion for fees and costs.

Because it appears that there is nothing further to litigate in this matter, the Court orders the parties to meet and confer regarding a stipulation of dismissal so that this case may formally be closed. The parties shall report back within a week of the date of this order.

This order disposes of Docket No. 170.

**IT IS SO ORDERED**.

Dated: June 23, 2023

EDWARD M. CHEN
United States District Judge

10